UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANGELA WAHAB, on behalf of herself and all others similarly situated,

                         Plaintiffs,

v.

SURYA NATURE, INC.,

                         Defendant.

**DECLARATION OF ALESSANDRO SILVA**

Case No. 1:24-cv-00384

**ALESSANDRO SILVA**, declares, pursuant to 28 U.S.C. § 1746:

1. I am the General Manager of Surya Nature, Inc. ("Surya"), the defendant in the above-captioned action.

2. Since 1995, Surya has offered vegan and cruelty-free personal care products made of Ayurvedic herbs, vegetal extracts from Amazonian rainforests, and zero harsh chemicals. We believe in the perfect combination of Amazon and other Brazilian biodiversity, ingredients with ancient Indian herbs and plants like henna. Through Surya, my focus is on producing the healthiest natural, organic, and vegan products through sustainable practices.

3. Surya owns and operates a website with the Internet address of https://www.suryabrasilproducts.com/ (the "Website"), where we sell essential oils, hand sanitizers, skin care products, hair care products, and hair dyes.

4. Plaintiff alleges in the Amended Complaint that prior to commencing this lawsuit, she visited the Website on two occasions to purchase mahogany henna hair dye powder, but encountered access barriers on the Website that would not allow her to complete the purchase. Upon information and belief, Plaintiff did not, at any time prior to commencing this lawsuit,

1

29142481.1



attempt to notify Surya that she had trouble accessing the Website, nor did Plaintiff, at any time, request a reasonable accommodation from Surya for purposes of accessing the Website. Surya does not have any record of a single request or contact from Plaintiff.

5. That aside, it is my understanding that there is no statute or regulation governing the standard for website accessibility for private businesses under the Americans with Disabilities Act or New York City Human Rights Law (collectively, the "Disability Laws"), only Department of Justice ("DOJ") guidance, issued in March 2022, which notes that businesses have "flexibility" with respect to compliance and "can choose how they will ensure that the programs, services, and goods they provide online are accessible to people with disabilities." *See Guidance on Web Accessibility and the ADA* (March 18, 2022), *available at* https://www.ada.gov/resources/web-guidance/. Thus, contrary to what Plaintiff suggests in the Amended Complaint, there is no legal obligation requiring private businesses to comply with existing technical standards, such as the Web Content Accessibility Guidelines ("WCAG").[1]

6. It is also my understanding that there is no "gold standard" for accessibility compliance testing. Every software program or evaluation tool—such as Web Accessibility Evaluation Tool ("WAVE"), Google Lighthouse ("Lighthouse") and Axe DevTools ("Axe")—runs its own algorithm to scan a website for accessibility compliance, therefore, each program determines its own "evaluation" of what is acceptable accessibility compliance.

---

[1] It is my understanding that the WCAG is a set of standards and recommendations for online content to ensure websites are accessible for all users, including those with disabilities. *See* https://www.w3.org/WAI/standards-guidelines/wcag/. The WCAG's website states as follows: "Web Content Accessibility Guidelines (WCAG) 2.2 covers a wide range of *recommendations* for making Web content more accessible. Following these guidelines will make content more accessible to a wider range of people with disabilities, including accommodations for blindness and low vision, deafness and hearing loss, limited movement, speech disabilities, photosensitivity, and combinations of these, and some accommodation for learning disabilities and cognitive limitations; ***but will not address every user need for people with these disabilities***." "The WCAG guidelines are just that – guidelines." https://wcag.com/resource/what-is-wcag/

29142481.1



7. While the WCAG's recommendations are helpful for creating a more inclusive web environment, the WCAG guidelines are in some respects aspirational in nature and otherwise unachievable in the real world of the dynamic web environment.

8. Nonetheless, it is my understanding that the Website substantially adheres to the WCAG and is otherwise in compliance with the DOJ Guidance and the Disability Laws.

9. On March 8, 2024, Surya retained a third-party website accessibility vendor and professional web developer, Mohit Thareja (https://www.fiverr.com/mohitadacomply), to provide support, enhance accessibility, ensure continued compliance, and provide continued support in the future.

10. Mr. Thareja and his team ran a complete compliance website audit to gauge the accessibility status of the Website and to identify any potential issues. A copy of the Status Report from Mr. Thereja detailing their work is attached as **Exhibit A**.

11. Mr. Thareja then remediated accessibility issues found on the Website, including the alleged issues identified by Plaintiff in the Amended Complaint. *See* Exhibit A; a copy of May 20, 2024 Correspondence Confirming Compliance is attached as **Appendix B**.

12. Mr. Thareja and his team addressed, among other items, the following:

- "Perceivable" features, including: Variable font sizes, high contrast mode, legible font mode, dark mode, inverted color mode, and a text-to-speech feature.

- "Operable" features, including: Adding site support for keyboard enabled navigation and highlighted links.

- "Understandable" features, including: Adding dynamic headline font size and Dynamic Letter Spacing.

29142481.1

- "Robust" features, including: Saving and caching user configurations for subsequent visits.

13. Mr. Thareja then ran another audit on the Website using WAVE, Lighthouse, and Axe to ensure that the issues were corrected and to fix any stray issues that appeared after the remediation, including the product page for the mahogany henna hair dye powder. The reports from these scans are attached as **Exhibit C**.

14. In addition to the aforementioned investments made to ensure the Website is accessible to all users, the Website contains an Accessibility Statement, which notes, among other things, that that Surya wants "everyone who visits this website to feel welcome and find the experience rewarding." The Accessibility Statement further provides a physical address and telephone number so that users can report any accessibility issues or concerns.

15. In sum, Surya has invested time, money, and other resources to ensure the Website is accessible to disabled persons and otherwise compliant with the Disability Laws, and Surya remains committed to continuous compliance with all applicable legal obligations and related standards.

16. It is my understanding, which has been confirmed by Mr. Thareja, WAVE, Lighthouse, and Axe, that the Website does not contain any of the alleged deficiencies identified in the Amended Complaint, and that the Website is otherwise accessible to visually-impaired and other disabled users. *See* Exhibits A-C.

17. Because the Website substantially adheres to the WCAG and otherwise complies with the DOJ Guidance and the Disability Laws, Surya has no reason to make further changes to the Website except, of course, to the extent changes are necessary to remain compliant. Surya does not intend to allow the Website to fall behind existing technical standards and will continue

29142481.1

to keep the Website compliant with any new standards because of its commitment to being accessible to its customers, potential customers, and to the general public, and because Surya does not wish to be named in another lawsuit.

18. With the assistance of Mr. Thareja, WAVE, Lighthouse, and Axe, Surya will continue to actively monitor the Website to ensure that new accessibility issues do not occur (and, if any issues do arise, that they are promptly remediated), and Surya will otherwise continue to bolster its accessibility compliance.

Based on the foregoing, together with the arguments set forth in Surya's memorandum of law in support of its motion to dismiss, I respectfully request that the Court grant Surya's motion in its entirety and dismiss this action, with prejudice.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: May 30, 2024

By: _____
　　　Alessandro Silva