**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ANGELA WAHAB, on behalf of herself and all others similarly situated,

                         Plaintiffs,

v.

SURYA NATURE, INC.,

                         Defendant.

Civil Action No.
1:24-cv-00384

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS

**BARCLAY DAMON LLP**
*Attorneys for Defendant*
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202

**ROBERT J. THORPE**
**ROSS M. GREENKY**
   *Of Counsel*

29476484.1

## TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

   I.  PLAINTIFF LACKS STANDING ................................................................................. 1

      A.  Plaintiff does not have a plausible intent to return to the Website ............................ 2

      B.  Plaintiff's status as a serial litigant is relevant to standing as it shows that she does not have a plausible intent to return to the Website ................................................................. 4

      C.  The cases upon which Plaintiff relies to demonstrate standing are inapposite and otherwise unavailing ........................................................................................................ 5

   II.  PLAINTIFF'S CLAIMS ARE MOOT ............................................................................ 6

   III. PLAINTIFF'S COMPLAINT FAILS TO STATE A CAUSE OF ACTION .................. 8

      Plaintiff fails to state a reasonable accommodation claim ............................................. 9

      A.  Plaintiff fails to state a reasonable accommodation claim ......................................... 9

      B.  Plaintiff fails to state a disparate treatment claim ...................................................... 9

      C.  Plaintiff fails to state a disparate impact claim ........................................................ 10

CONCLUSION .............................................................................................................................. 10

29476484.1

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*,
  215 F.3d 219 (2d Cir. 2000) ...................................................................................................... 7

*Calcano v. Swarovski N. America Ltd.*,
  36 F.4th 68 (2d Cir. 2022) ................................................................................................ 1, 2, 5

*Castillo v. Hudson Theatre, LLC*,
  412 F. Supp. 3d 447 (S.D.N.Y. 2019) ...................................................................................... 9

*Dawkins v. Schott NYC Corp.*,
  2023 U.S. Dist. LEXIS 171967 (E.D.N.Y. Sept. 26, 2023) .................................................. 2, 5

*Diaz v. Kroger Co.*,
  2019 U.S. Dist. LEXIS 93177 (S.D.N.Y. June 4, 2019) ........................................................... 8

*Feliz v. IHealth Labs Inc.*,
  2024 U.S. Dist. LEXIS 16296 (S.D.N.Y. Jan. 30, 2024) ................................................. 1, 3, 5

*Fontanez v. Valley Lahvosh Baking Co.*,
  2023 U.S. Dist. LEXIS 149437 (S.D.N.Y. Aug. 22, 2023) (Vyskocil, J.) ............................ 2, 5

*Goldberg v. Stein Saks, PLLC*,
  2024 U.S. Dist. LEXIS 32935 (S.D.N.Y. Feb. 26, 2024) (Vyskocil, J.) ................................ 1, 5

*Loadholt v. Oriental-Decor.Com Inc.*,
  2024 U.S. Dist. LEXIS 2293 (S.D.N.Y. Jan. 4, 2024) ...................................................... 1, 2, 5

*Martin v. Second Story Promotions, Inc.*,
  2024 U.S. Dist. LEXIS 32639 (S.D.N.Y. Feb. 26, 2024) (Vyskocil, J.) ................................ 1, 5

*Shaywitz v. Am. Bd. of Psychiatry & Neurology*,
  848 F. Supp. 2d 460 (S.D.N.Y. 2012) ...................................................................................... 9

*Sullivan v. Bdg Media*,
  71 Misc. 3d 863 (Sup. Ct. N.Y. Cnty. 2021) ............................................................................ 9

*Sullivan v. Study.com LLC*,
  2019 U.S. Dist. LEXIS 47073 (S.D.N.Y. Mar. 21, 2019) ............................................... 1, 9, 10

*Tavarez v. Extract Labs, Inc.*,
  2023 U.S. Dist. LEXIS 55615 (S.D.N.Y. March 30, 2023) ...................................................... 7

*Tavarez v. Moo Organic Chocolates*, *LLC*,
  641 F. Supp. 3d 76 (S.D.N.Y. Nov. 21, 2022) ...................................................................... 5, 6

*Tavarez-Vargas v. Annie's Publ'g, LLC*,
    2023 U.S. Dist. LEXIS 42955 (S.D.N.Y. March 14, 2023) .................................................. 2, 5

*Thorne v. Cap. Music Gear LLC*,
    2024 U.S. Dist. LEXIS 67366 (S.D.N.Y. Apr. 12, 2024) ....................................................... 1

*Toro v. Gen. Store, LLC*,
    2023 U.S. Dist. LEXIS 124787 (S.D.N.Y. July 19, 2023) (Vyskocil, J.) ............................... 4

*Toro v. Medbar Corp.*,
    2024 U.S. Dist. LEXIS 91815 (S.D.N.Y. May 22, 2024) ...................................................... 7

*Velazquez v. Home Controls, Inc.*,
    2023 U.S. Dist. LEXIS 124514 (S.D.N.Y. July 19, 2023) (Vyskocil, J.) ............................... 4

*Wexler v. Hasbro, Inc.*,
    2022 U.S. Dist. LEXIS 43543 (S.D.N.Y. March 11, 2022) ................................................... 7

*Winegard v. Golftec Intellectual Prop. LLC*,
    674 F. Supp. 3d 21 (E.D.N.Y. 2023) ................................................................................. 4, 5

**Other Authorities**

https://www.amazon.com/Surya-Brasil-Natural-Coloring-Mahogany/dp/B005P0HC38/); ......................... 3

U.S. DEPARTMENT OF JUSTICE, *available at* https://www.ada.gov/resources/web-guidance/ ................................................................................................................................. 6

WALMART (https://www.walmart.com/ip/Surya-Brasil-Henna-Powder-Hair-Coloring-Mahogany-1-Box/28937458) ......................................................................................... 3

**PRELIMINARY STATEMENT**

In deciding this motion to dismiss, the Court arguably need look no further than the recent, well-reasoned decision issued by Justice Ramseur in *Rodriguez v. Bitchin' Inc.*, dismissing a similar website accessibility lawsuit filed on behalf of another serial litigant for failure to state a claim under any theory of disability discrimination. 2024 N.Y. Misc. LEXIS 2043 (Sup. Ct. N.Y. Cnty. May 3, 2024), *appeal docketed*, Index No. 2024-03542 (1st Dep't June 6, 2024).[1] That aside, even if the Court is not inclined to follow or otherwise consider the *Bitchin'* decision, Plaintiff's claims should be dismissed for lack of subject matter jurisdiction, specifically standing and mootness, and as a matter of public policy. For these reasons, among others, Defendant respectfully requests that the Court issue an Order dismissing the Amended Complaint in its entirely and with prejudice.

**ARGUMENT**

**I.  PLAINTIFF LACKS STANDING**

Plaintiff's opposition neglects to appreciate the fact that, since the Second Circuit's decision in *Calcano v. Swarovski N. America Ltd.*, 36 F.4th 68 (2d Cir. 2022), which "raised the bar appreciably for adequately pleading standard to seek injunctive relief in ADA cases," *see Loadholt v. Oriental-Decor.Com Inc.*, 2024 U.S. Dist. LEXIS 2293, at *7-10 (S.D.N.Y. Jan. 4, 2024), *adopted by* 2024 U.S. Dist. LEXIS 11506 (S.D.N.Y. Jan. 23, 2024), courts have repeatedly dismissed website accessibility lawsuits which, as is the case here, lacked allegations sufficient to establish standing. *See, e.g., Thorne v. Cap. Music Gear LLC*, 2024 U.S. Dist. LEXIS 67366, at *6-7 (S.D.N.Y. Apr. 12, 2024); *Goldberg v. Stein Saks, PLLC*, 2024 U.S. Dist. LEXIS 32935, at *1-2 (S.D.N.Y. Feb. 26, 2024) (Vyskocil, J.); *Martin v. Second Story Promotions, Inc.*, 2024

---

[1] Claims for disability discrimination under federal, state, and local laws are generally governed by the same legal standards. *See, e.g., Sullivan v. Study.com LLC*, 2019 U.S. Dist. LEXIS 47073, at *16 (S.D.N.Y. Mar. 21, 2019).

U.S. Dist. LEXIS 32639, at *6-7 (S.D.N.Y. Feb. 26, 2024) (Vyskocil, J.); *Feliz v. IHealth Labs Inc.*, 2024 U.S. Dist. LEXIS 16296, at *1-2, 8-13 (S.D.N.Y. Jan. 30, 2024); *Loadholt*, 2024 U.S. Dist. LEXIS 2293, at *7-10; *Dawkins v. Schott NYC Corp.*, 2023 U.S. Dist. LEXIS 171967, at *1-2, 8-9 (E.D.N.Y. Sept. 26, 2023); *Fontanez v. Valley Lahvosh Baking Co.*, 2023 U.S. Dist. LEXIS 149437, at *8 (S.D.N.Y. Aug. 22, 2023) (Vyskocil, J.); *Tavarez-Vargas v. Annie's Publ'g, LLC*, 2023 U.S. Dist. LEXIS 42955 at 5-6 (S.D.N.Y. March 14, 2023).

*Calcano* and its progeny stand for the proposition that, "[i]n the digital context, a plaintiff satisfies the injury in fact requirement by asserting 'non-conclusory, plausible factual allegations from which it is reasonable to infer, based on the past frequency of visits and the plaintiff's articulated interest in the products or services available on the particular website, that the plaintiff intends to return to the website.'" *Fontanez*, 2023 U.S. Dist. LEXIS 149437, at *5.

A. **Plaintiff does not have a plausible intent to return to the Website.**

Aside from the fact that Plaintiff has filed 69 lawsuits since June 28, 2023, there is perhaps no better evidence demonstrating that Plaintiff's purported "intent to return" to the website is not plausible than the existence of the same generic allegation used verbatim in most if not all of her complaints, specifically the following allegation: "Despite this direct harm and frustration, Plaintiff intends to attempt to access the Website in the future to purchase products and services the Website offers, and more specifically the [insert product], if remedied." Dkt. No. 21, pp. 13-14.  Plaintiff noticeably sidestepped this issue in opposition to the instant motion.

Notwithstanding that and countless other plausibility issues, Plaintiff correctly notes in opposition that she has alleged *some* facts in an effort to establish standing, but *some* is not all and, in that regard, the Amended Complaint fails to sufficiently allege other facts that numerous courts have found necessary to establish standing.  These facts include allegations addressing: (1) why

2

Plaintiff has a particular interest in purchasing this hair dye from this Defendant or Website, as opposed to the same or similar hair dye found on numerous other websites, (2) why Plaintiff could not find this hair dye or any similar hair dye elsewhere on the Internet, and (3) how she determined that this particular hair dye would suit her taste given the alleged defects to the Website. Plaintiff's failure to include any such allegations in the Amended Complaint is fatal to her claims. *Compare* Dkt. No. 17 *with Feliz*, 2024 U.S. Dist. LEXIS 16296, at *8-13 (noting that the plaintiff failed to allege "that IHealth is the only retailer that sells trustworthy COVID-19 tests, or that he has searched for similar COVID-19 tests but has been unable to find them elsewhere at a comparable price point," or "why she prefers COVID-19 tests available from IHealth over those available from any other healthcare company or website").

Plaintiff alleges that she sought to make a purchase from the Website as opposed to from another online retailer because the Website "offers more products and greater color selection than any other websites selling Surya Brasil brand products, such as Walmart or Amazon." *See* Dkt. No. 17, ¶¶ 24, 44; Dkt. No. 26, p. 20. However, in the Amended Complaint, the only specific product that Plaintiff allegedly sought to purchase was "the Henna Powder Mahogany Surya Brasil 1.76oz hair dye." *See* Dkt. No. 17, ¶ 21, 45. Accordingly, Plaintiff's allegation that she sought to make a purchase from the Website because it "offers more products and greater color selection" conflicts with her purported reason for visiting the Website and is otherwise a red herring. Indeed, if Plaintiff truly wanted to purchase Defendant's hair dye, she easily could have discovered that it is available for purchase elsewhere on the Internet, including from Amazon and Walmart.[2]

Plaintiff also alleges that she sought to purchase Defendant's hair dye directly from the Website, as opposed to from another online retailer, because the Website offers a 30% discount

---

[2] *See* AMAZON (https://www.amazon.com/Surya-Brasil-Natural-Coloring-Mahogany/dp/B005P0HC38/); WALMART (https://www.walmart.com/ip/Surya-Brasil-Henna-Powder-Hair-Coloring-Mahogany-1-Box/28937458).

3

for first time purchasers. *See* Dkt. No. 17, ¶¶ 24, 44; Dkt. No. 26, pp. 2, 20, 22. However, the discount referenced by Plaintiff was a "special promotion" that expired over two (2) months ago. Reply Affidavit of Alessandro Silva ("Silva Reply Aff."), ¶ 3. The Website does not currently offer any discounts to first time purchasers or anyone else, which Plaintiff would have known if she actually visited the Website at any point in the last two (2) months. *Id.* Accordingly, even if Plaintiff actually intended to visit the Website to purchase Defendant's hair dye (rather than for the sole purpose of commencing yet another lawsuit), she would not receive a 30% discount. *Id.*

The short and simple truth is that Plaintiff was not a customer in the market for this particular hair dye from this particular website, but instead a serial litigant lacking any genuine interest in the products she substitutes throughout her dozens of boilerplate complaints alleging the same violations and harm. *See Toro v. Gen. Store, LLC*, 2023 U.S. Dist. LEXIS 124787, at *9 (S.D.N.Y. July 19, 2023) (Vyskocil, J.) ("If it is the earrings that Plaintiff wants (as opposed to another lawsuit) there are options").

### B. **Plaintiff's status as a serial litigant is relevant to standing as it shows that she does not have a plausible intent to return to the Website.**

Plaintiff remarkably suggests in opposition to the instant motion that she is not a serial litigant and that, even if she were labeled as such, it would not affect her standing. *See* Dkt. No. 26, pp. 16, 22. However, district courts have routinely rejected the claims of serial litigants for failure to sufficiently allege a real and immediate threat of future injury. *See, e.g., Velazquez v. Home Controls, Inc.*, 2023 U.S. Dist. LEXIS 124514, at *6-8 (S.D.N.Y. July 19, 2023) (Vyskocil, J.); *Winegard v. Golftec Intellectual Prop. LLC*, 674 F. Supp. 3d 21, 25-26 (E.D.N.Y. 2023). Plaintiff neglects to dispute in opposition that her 69 nearly identical, boilerplate complaints (all filed since June 28, 2023), weigh against the plausibility of her allegations of a real and immediate threat of future injury. *See Toro*, 2023 U.S. Dist. LEXIS 124787, at *7; *Velazquez*, 2023 U.S. Dist.

LEXIS 124514, at *6-8; *Winegard*, 674 F. Supp. 3d at 26 ("The fact that plaintiff is a serial filer (a fact easily cleaned from public records) thus bears on the plausibility of [her] standing claim.").

      **C.**      <u>**The cases upon which Plaintiff relies to demonstrate standing are inapposite and otherwise unavailing.**</u>

It should not be overlooked that <u>all</u> of the cases cited by Plaintiff with respect to standing were decided *before* 2023. *See* Dkt. No. 26, pp. 14-21. In this regard, Plaintiff conspicuously ignores numerous and much more recent post-*Calcano* decisions cited by Defendant, including a decision in a website accessibility lawsuit filed against Plaintiff's law firm. *See Stein Saks, PLLC*, 2024 U.S. Dist. LEXIS 32935, at *1-2 (Vyskocil, J.); *Martin, Inc.*, 2024 U.S. Dist. LEXIS 32639, at *6-7 (S.D.N.Y. Feb. 26, 2024) (Vyskocil, J.); *Feliz*, 2024 U.S. Dist. LEXIS 16296, at *1-2, 8-13; *Loadholt*, 2024 U.S. Dist. LEXIS 2293, at *7-10; *Dawkins*, 2023 U.S. Dist. LEXIS 171967, at *1-2, 8-9; *Fontanez*, 2023 U.S. Dist. LEXIS 149437, at *8 (Vyskocil, J.); and *Annie's Publ'g, LLC*, 2023 U.S. Dist. LEXIS 42955 at 5-6. These more recent post-*Calcano* decisions demonstrate that "[s]tanding requires more" than what is alleged by Plaintiff in the Amended Complaint. *See, e.g., Winegard*, 674 F. Supp. 3d 21, at 25-26.

Plaintiff's heavy reliance on *Tavarez v. Moo Organic Chocolates, LLC*, 641 F. Supp. 3d 76 (S.D.N.Y. Nov. 21, 2022), is a bit surprising and otherwise quite telling. Plaintiff acknowledges in opposition that this Court in *Moo Organic* "expressed some misgivings about the problems of serial litigation" and, "[r]ather than dismiss the case, the [C]ourt ordered jurisdictional discovery." *See* Dkt. No. 26, p. 14; 641 F. Supp. 3d at 81 (finding "Plaintiff's allegations, while not quite the 'mad-lib' allegations that were present in *Calcano*, not to be particularly plausible"). Moreover, in *Moo Organic*, this Court had "significant concerns . . . with the accuracy of [plaintiff's] allegations," noting as examples, that the plaintiff did not "allege how he came to know about Moo Organic or whether he has ever tasted their product," and that "there are no allegations that shed

5

light on why, all of a sudden, . . . he developed a particular hankering for this particular brand of chocolate." *Id.* at 81-82.  In sum, even the "best" of cases relied upon by Plaintiff does not support a finding that she alleged facts in the Amended Complaint sufficient to establish standing.

## II. PLAINTIFF'S CLAIMS ARE MOOT

Plaintiff does not address (let alone dispute) that there is no statute or regulation governing the standard for website accessibility for private businesses under the Disability Laws.  *See Guidance on Web Accessibility and the ADA* (March 18, 2022), U.S. DEPARTMENT OF JUSTICE, *available at* https://www.ada.gov/resources/web-guidance/ (noting that businesses have "flexibility" with respect to compliance and that "Businesses . . . can currently choose how they will ensure that the programs, services, and goods they provide online are accessible to people with disabilities.").  The credible evidence before the Court, discussed below, confirms that Defendant has done all that (and more than) the law requires.

That threshold issue aside, Plaintiff argues that the Court should not consider the Silva Declaration, and in that regard, Plaintiff suggests without any support that Defendant's remediation efforts are temporary (and done solely for purposes of this litigation).  *See* Dkt. No. 26, pp. 9-10.  This insinuation is patently false, as evidenced by Defendant's substantial investment in, and ongoing commitment to, ensuring the Website is and remains accessible to all users.  *See* Dkt. No. 22, ¶¶ 8-18; Silva Reply Aff., ¶¶ 4-13.  Quite frankly, it defies logic to believe that Defendant would go through all the efforts described in the Silva Declaration and the Silva Reply Affidavit for a strategic, temporary fix of the Website, only to then run the risk after the dismissal of this lawsuit of being sued again by another serial plaintiff.  *See* Dkt. No. 22, ¶ 17.

Plaintiff also argues that Defendant's retention of Mohit Thareja (a third-party website accessibility consultant and professional web developer) and related reliance on his report is

6

insufficient to show that the Website is accessible. *See* Dkt. No. 26, pp. 6-7. Plaintiff specifically argues that Mr. Thareja's report should be disregarded because it is submitted with the Silva Declaration, as opposed to directly from Mr. Thareja. *See id.* at p. 16 of 29.

However, contrary to Plaintiff's argument, Mr. Silva "need not have knowledge of the technical nature of the modifications made to attest to the fact that [Defendant] hired a vendor with ADA expertise to modify and audit the website and that any ADA violations were resolved." *Toro v. Medbar Corp.*, 2024 U.S. Dist. LEXIS 91815, at *8, n.4 (S.D.N.Y. May 22, 2024), *adopted by* 2024 U.S. Dist. LEXIS 102870, at *2 (S.D.N.Y. June 7, 2024); *see also Tavarez v. Extract Labs, Inc.*, 2023 U.S. Dist. LEXIS 55615, at *1-2, 7-8, 13 (S.D.N.Y. March 30, 2023). "In similar ADA website cases, courts in this District have ruled that a sworn statement by a company official with direct knowledge of the allegations describing the steps taken to remedy the violations and the measures in place going forward to prevent future violations is sufficient grounds for determining the violations have been cured and are extremely unlikely to recur." *Medbar Corp.*, 2024 U.S. Dist. LEXIS 91815, at *7.

It also bears noting that Plaintiff's opposition relies solely on a report attached to an affidavit submitted by *Plaintiff's counsel* (not a third-party expert), *see* Dkt. No. 26-2, and therefore Plaintiff's argument with respect to Defendant's reliance on the report from Mr. Thareja is hypocritical at best. Nonetheless, and regardless of whether the Court accepts or rejects either or both reports, recent accessibility testing confirms that the Website is accessible and, therefore, Plaintiff's claims are moot. Silva Reply Aff., ¶¶ 4-13, Exs. A-C.[3]

---

[3] To the extent Plaintiff argues that Defendant is prohibited from introducing "new evidence" in reply to the opposition, Defendant submits that the Court's consideration of the four factors referenced in *Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226-27 (2d Cir. 2000) weighs in favor accepting such evidence. *See Wexler v. Hasbro, Inc.*, 2022 U.S. Dist. LEXIS 43543, at *22 (S.D.N.Y. March 11, 2022); *Tavarez*, 2023 U.S. Dist. LEXIS 55615, at *11-12 ("[A]s part of its reply, Defendant submitted yet another voluminous and time-intensive affidavit from Rogers rebutting any inference of non-compliance with the WCAG — and persuasively doing so").

Specifically, since filing its initial moving papers, Defendant has partnered with a third-party expert in website accessibility testing, Archana Kalbhor, to further evaluate the Website's accessibility compliance. *Id.* at ¶ 6. Ms. Kalbor conducted audits of the Website using accessibility scans from Web Accessibility Evaluation Tool ("WAVE"), Google Lighthouse ("Lighthouse"), and Axe DevTools ("Axe"), and PowerMapper. *Id.* at ¶ 7. Ms. Kalbor then issued a comprehensive report based these audits, which confirmed that the Website (1) conforms with the WCAG, and (2) contains no accessibility compliance violations. *Id.* at ¶ 8, Ex. A. Further, and despite confirmation of the Website's accessibility compliance from Mr. Thareja, Ms. Kalbor, and numerous scanning tools, on July 29, 2024, Defendant conducted additional audits of the Website using PowerMapper[4] and accessScan, which yet again confirmed the Website's accessibility compliance. *See id.* at ¶¶ 9-11, Exs. B-C. Defendant continues to direct its internal team to remediate any potential issues with the Website despite the repeated confirmation of the its accessibility by various scanning tools. *See id.* at ¶¶ 12-13.

In sum, given that there is no statute or regulation governing the standard for website accessibility under the Disability Laws, which again is not disputed by Plaintiff, the Silva Declaration, the Silva Reply Affidavit, the reports from Mr. Thareja and Ms. Kalbhor, and the numerous audit reports confirm that Defendant has done all that (and more than) the law requires, that the Website is accessible, and that, as a result, Plaintiff's claims are moot. *See, e.g., Diaz v. Kroger Co.*, 2019 U.S. Dist. LEXIS 93177, at *5-12 (S.D.N.Y. June 4, 2019).

### III. PLAINTIFF'S COMPLAINT FAILS TO STATE A CAUSE OF ACTION

As noted in Defendant's initial motion papers, the Amended Complaint also fails to state a claim upon which relief can be granted. *See, e.g.,* Dkt. No. 21, p. 25 of 29, n. 5. Indeed, the court

---

[4] PowerMapper is the <u>same evaluation tool</u> relied upon by Plaintiff's counsel in opposition to the instant motion. Thus, even by Plaintiff's own "gold standard," there can be no dispute that the Website is accessible.

in *Rodriguez v. Bitchin' Inc.* recently dismissed a similar website accessibility lawsuit filed by another serial litigant for failure to state a cause of action under *any* alleged theory of disability discrimination. *See* 2024 N.Y. Misc. LEXIS 2043 (Sup. Ct. N.Y. Cnty. May 3, 2024), *appeal docketed*, Index No. 2024-03542 (1st Dep't June 6, 2024).

### A. Plaintiff fails to state a reasonable accommodation claim

"Notice of the alleged . . . disability is an assumed prerequisite" of a claim for failure to make a reasonable accommodation under the Disability Laws. *Castillo v. Hudson Theatre, LLC*, 412 F. Supp. 3d 447, 451 (S.D.N.Y. 2019). Courts have repeatedly observed that dismissal is warranted where, as here, the complaint fails to allege that the plaintiff asked for and was refused an accommodation. *See Shaywitz v. Am. Bd. of Psychiatry & Neurology*, 848 F. Supp. 2d 460, 467 (S.D.N.Y. 2012); *Sullivan v. Bdg Media*, 71 Misc. 3d 863, 871 (Sup. Ct. N.Y. Cnty. 2021).

Here, as detailed in Defendant's initial motion papers, Plaintiff does not allege to have contacted Defendant (or to have otherwise put Defendant on notice of any purported disabilities) prior to filing the initial Complaint, nor did she ever do so. *See generally* Dkt. No. 17; *see also* Dkt. No. 22, ¶¶ 4, 14. Plaintiff also neglects to allege in the Amended Complaint that a request for an accommodation would have been futile. *See Sullivan*, 71 Misc. 3d at 872. The absence of these allegations warrants dismissal of any reasonable accommodation claim.

### B. Plaintiff fails to state a disparate treatment claim

The Amended Complaint fails to allege "facts that could plausibly support an inference of defendant's discriminatory motive when it allegedly denied [Plaintiff] access to their website." *See Bitchin'*, 2024 N.Y. Misc. LEXIS 2043, at *5-6. As detailed in Point III(A) *supra* and in Defendant's initial moving papers, Plaintiff did not request a reasonable accommodation from Defendant to allow her to access the Website or otherwise contact Defendant before

9

filing suit. *See generally* Dkt. No. 17. "In this context, where the public accommodation is a website instead of a physical public accommodation, plaintiff has not shown that defendant knew of [her] visual impairment let alone discriminated on said basis." *Bitchin'*, 2024 N.Y. Misc. LEXIS 2043, at *5. "As such, since plaintiff cannot plead that defendant discriminated against [her] 'because of' [her] disability, [s]he cannot not properly allege injury under a disparate treatment theory." *Id.* at *6. Therefore, Plaintiff's failure to request a reasonable accommodation is fatal to any disparate treatment claim.

C. **Plaintiff fails to state a disparate impact claim**

The alleged barriers preventing individuals with visual impairments from accessing the Website are neither a "policy" nor "practice" that can be the subject of a disparate impact claim. *See, e.g., Bitchin'*, 2024 N.Y. Misc. LEXIS 2043, at *7. In fact, the Website cannot be both the "the place of public accommodation" and the "policy" or "practice" in question. *Id.* at *7-8. The Amended Complaint fails to identify, with respect to the Website, an independent policy or practice that has a discriminatory impact on individuals with visual impairments. *Id.* at *8. Further, Defendant's ownership and operation of the Website does not, in and of itself, subject Defendant to a disparate impact claim. *Id.* at *8-9. Therefore, Plaintiff fails to "adequately plead an injury arising from a 'policy' or 'practice' of defendant" necessary to maintain a disparate impact claim. *Id.* at *9.

## CONCLUSION

For these reasons and those set forth previously, Defendant respectfully requests that the Court issue an Order dismissing the Amended Complaint in its entirety, with prejudice, and granting Defendant attorneys' fees and costs as the prevailing party, together with such other and further relief as this Court deems just and proper.

**Dated**: August 2, 2024                                     **BARCLAY DAMON LLP**

By: <u>/s/ Ross M. Greenky</u>
    Robert J. Thorpe, Esq.
    Ross M. Greenky, Esq.
    Barclay Damon Tower
    125 East Jefferson Street
    Syracuse, New York 13202

11